STEVEN G. KALAR
Federal Public Defender
Northern District of California
DAVID W. RIZK
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700
Facsimile: (415) 436-7706
Email:    David_Rizk@fd.org

Counsel for Defendant LOPEZ

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EMMANUEL LOPEZ,<br><br>Defendant. | **Case No.:** CR 20–0067 VC<br><br>**DEFENDANT'S SENTENCING MEMO AND REQUEST FOR DOWNWARD VARIANCE**<br><br>**REDACTED COPY** |

### I.    INTRODUCTION

Emmanuel Lopez will soon be before the Court for change-of-plea and sentencing in this minor drug case out of the Tenderloin.  Mr. Lopez, now 24 years old, grew up in Redwood City, and is a lifelong Bay Area resident.  At a young age, he was exposed to marijuana, which led to harder drugs, including heroin (previously, his drug of choice) and cocaine.  He was holding several grams of both drugs when he was stopped in this case for *using*—not selling—heroin.  He now admits he was holding a small amount of cocaine in baggies for somebody else (who was selling), and that he shared his own heroin from time to time with other addicts on the street.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  When approached by SFPD

officers on the day of his arrest, Mr. Lopez was cooperative and apologetic for using heroin on the street. ▇

Although the District Attorney's Office dismissed charges, as part of the "Federal Initiative for the Tenderloin," the federal authorities decided to prosecute Mr. Lopez. ▇

▇ Mr. Lopez is a young addict with very minimal criminal history—an infraction and two misdemeanors, the last of which was for *possession*. This is not a case that should have been prosecuted federally, and it is a case that Mr. Lopez could well have beaten at trial. Mr. Lopez, understandably, was not interested in ▇ ▇. Instead, he wanted to get sober and put the ordeal of this case behind him. Admirably, that is exactly what he has done: Mr. Lopez successfully completed Center Point while on pretrial release, and he is now enrolled in classes to complete his G.E.D. and is looking for a job. He has the support of his family, and is working toward beginning a career in the automotive field. He already served approximately three months in jail during the pendency of state proceedings, and the institution of this case. He now asks for leniency and a sentence of three years of probation, consistent with U.S. Probation's recommendation.

## II.     BACKGROUND

Mr. Lopez was born at Stanford Hospital in 1995 to Ricardo Flores and Georgina Lopez. PSR ¶ 41. He had a stable childhood growing up in Redwood City and San Mateo. *Id.* ¶ 42. Although his family all still resides in the area, Mr. Lopez's parents separated when he was just three years old. *Id.* His family met his basic needs but was not well-off. *Id.* His father drives a taxi and his mother works in a convalescent home. *Id.* ¶ 41. Mr. Lopez enjoyed sports in school, *id.* ¶ 42, but struggled with academics, possibly due to learning limitations which were not adequately addressed at the time. Mr. Lopez reported to Probation that he attended some assistive learning classes in 8th grade, and, although he can read and write, sometimes struggles with vocabulary and complex sentences. *Id.* ¶ 49. Mr. Lopez's lack of academic success appears to have led to his isolation from other students, disciplinary issues in school, and ultimately his drug use. Mr. Lopez attended San Mateo High

School but dropped out in the ninth grade. *Id.* He is now enrolled in Alameda Adult School, working toward completing his G.E.D. Rizk Decl., ¶ 3. The Federal Public Defender's Office recently donated a laptop to Mr. Lopez to enable him to continue his online classes. *Id.*

Prior to the institution of this case, Mr. Lopez was struggling with severe addiction. PSR ¶ 41. Approximately four years ago, his grandfather died, a traumatic event that contributed to his abuse of heroin beginning at about age 20. *Id.* ¶ 48. Although Mr. Lopez was able to stop using while prescribed Suboxone for a period, he eventually relapsed in 2019. *Id.* The relapse led to his misdemeanor possession conviction, an incident in which he approached a police officer for a ride home and was charged for possession of 0.1 grams of heroin and paraphernalia for personal use. *Id.* ¶ 31. Mr. Lopez received 29 days of jail in that case—the longest sentence he has ever received. *Id.* At the time of his arrest in this case, in December 2019, Mr. Lopez had been living on and off the streets, frequently using heroin as well as other drugs (including cocaine and methamphetamine) to keep him awake, for about six months.



**Mr. Lopez (far right) with friends at home.**

[redacted]

DEFENDANT'S SENTENCING MEMO
*LOPEZ*, CR 20–0067 VC

3



**Mr. Lopez (far right) with friends and family.**

Mr. Lopez was arrested ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ on December 28, 2019, after SFPD officers observed him using heroin in the mid-market area of San Francisco. PSR ¶ 9. He was entirely cooperative when approached—he identified himself, and told the officers he was on probation. *Id.* ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Rizk Decl., Ex. A at 00:22-28. The officers appeared to ignore Mr. Lopez, and told him that there was a "zero tolerance" policy in effect in the Tenderloin. Rizk Decl., Ex. A at 9:48. Mr. Lopez was charged by the District Attorney (which later dismissed the charges) and he remained in continuous custody from his arrest until March 12, 2020. Rizk Decl., ¶ 7. On that date, Magistrate Judge Alex G. Tse released Mr. Lopez to his family's residence on stringent conditions, while he waited for bed space at Center Point. ECF No. 11. Mr. Lopez completed a 90-day program at Center Point in August 2020. PSR ¶ 48. Since then, Mr. Lopez has been living with his family at home and has remained sober and tested negative. *Id.* With assistance from defense counsel and U.S. Pretrial Services, he is now seeking employment in addition to taking online G.E.D. classes and participating in outpatient counseling. Rizk Decl., ¶ 3.

### III.  GUIDELINES

Mr. Lopez does not object to the offense level calculated in the PSR as follows:

| | |
|---|---:|
| Base offense level, U.S.S.G. § 2D1.1(c)(13): | 14 |
| Weapon, U.S.S.G. § 2D1.1(b)(1) | +2 |
| Acceptance of responsibility, U.S.S.G. § 3E1.1: | <u>-3</u> |

---

[1] Notably, even after this case was instituted, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Total offense level: 13

Mr. Lopez falls into Criminal History Category III.  He has three prior 1-point convictions, and was on probation at the time of his arrest, as set forth in the PSR.  PSR ¶¶ 29-31.  The Guidelines range associated with a total offense level 13 and Category III is 18-24 months.

Although Mr. Lopez does not formally object to the Guideline calculation set forth in the PSR because it is technically and legally correct, he does maintain that the Guidelines substantially overstates the seriousness of the offense and his criminal history.  As to the offense level, *first*, some portion of the heroin was for Mr. Lopez's own consumption and none of it was packaged for sale.  *Second*, the drugs were never weighed for *net* weight, which was in all likelihood just 1-3 grams total.[2]  He admits to Count Two only because he often shared heroin with others on the street, which qualifies as distribution.  Rizk Decl., Ex. B.  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬  *Fourth*, Mr. Lopez admits that he possessed a small pocket knife at the time of his arrest and therefore does not formally object to the application of the enhancement under U.S.S.G. § 2D1.1(b)(1).  However, he believes that the enhancement, which is typically reserved for firearms, further overstates the seriousness of the offense here.  Notably, he was working for SFPD at the time of his arrest and alerted the arresting officers to the knife for their safety before they searched him—undermining the government's assertion that Mr. Lopez's possession of the knife posed a serious threat to others.  PSR ¶ 29.

The Guidelines also overstate the seriousness of Mr. Lopez's prior criminal history.  Mr. Lopez has a prior infraction and two prior misdemeanors, the most recent for possession of narcotics for personal use.  PSR ¶¶ 29-31.  The latter, the most serious case Mr. Lopez has ever had, resulted in a sentence of 29 days in jail and 18 months of probation, and hence three criminal history points—the same number of points he would have received if he had received a very lengthy multi-year sentence for a violent crime under U.S.S.G. § 4A1.1(a).  The bottom line is, Mr. Lopez's criminal history

---

[2] The lowest possible offense level for heroin under the Guidelines is level 14.  *See* U.S.S.G. § 2D1.1(c)(13).  Thus, even if Mr. Lopez were credited with less weight due to a net weight or in view of his personal use of heroin, the base offense level would not change.

DEFENDANT'S SENTENCING MEMO
*LOPEZ*, CR 20–0067 VC

suggests a young man who was struggling with poverty, instability, and addiction.  He is far from the kind of defendant this Court typically sees in federal drug trafficking cases (other than those brought in connection with the U.S. Attorney's "Federal Initiative for the Tenderloin").

### IV.   ARGUMENT

#### A.  Legal Standard.

The Court is familiar with the directives of *United States v. Booker*, 543 U.S. 220 (2005) and 18 U.S.C. § 3553(a).  The Sentencing Guidelines range is not mandatory and the Court has a duty to exercise judgment and discretion in arriving at an appropriate sentence.  Importantly, the Court may not presume the Guidelines range is reasonable.  *Nelson v. United States*, 555 U.S. 350, 352 (2009) (per curiam).  Instead, the Court must consider the Guidelines range, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to avoid unwarranted sentence disparities among similarly situated defendants.  *See* 18 U.S.C. § 3553(a)(1), (a)(4) and (a)(6).  In crafting a sentence that is "sufficient, but not greater than necessary," to comply with the purposes set forth in 18 U.S.C. § 3553(a), the Court must also consider the need for the sentence imposed: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.  18 U.S.C. § 3553(a)(2).

#### B.  A significant variance is warranted under the circumstances down to a probationary sentence.

Mr. Lopez respectfully requests that the Court sentence him to three years of probation.  He submits this a sufficient sentence under the circumstances, and in connection with this request, several matters are worth the Court's consideration:

*First*, the charged offense and Mr. Lopez's circumstances counsel in favor of a probationary sentence.  This case should not have been prosecuted federally.  Mr. Lopez possessed a few grams of narcotics, with the intention of sharing his own heroin with other addicts, and temporarily holding a net gram or so total of cocaine for somebody else who was selling them.  It is undisputed that he

never sold any drugs, let alone large quantities. Indeed, he has no history of selling drugs. There was no violence involved, and even the purported weapon—a pocketknife, which he cautiously announced to officers—did not pose a realistic threat to anyone. Mr. Lopez was completely cooperative with officers at the time of his arrest. Mr. Lopez was not (and is not) a serious offender or a threat to our community. Rather, he was a local kid, who had a difficult few years, and found himself living on and off the streets, addicted to opioids. Notably, it appears that the DEA and the U.S. Attorney's Office had very little idea of who Mr. Lopez was at the time they charged him federally, or even any interest in finding out after the fact. Instead, it appears (as he was told by SFPD) that he was arrested and charged as a result of the federal government's blind "zero tolerance" policy in the Tenderloin. Federal prosecutions such as this one inappropriately single out addicts where the gravity of the crime simply does not warrant the use of federal resources, let alone a multi-month sentence. Over a year after the federal government's misguided campaign was announced, and so many arrests later, it appears to have been largely ineffective.[3] There is no evidence that it has saved lives or had a significant positive impact on the neighborhood.[4] Given the circumstances of the offense, additional custodial time is certainly not necessary to mete out sufficient punishment, consistent with the mandate of § 3553(a).

*Second*, Mr. Lopez has now taken major steps in his life to overcome his addiction and rehabilitate himself. Most importantly, he is clean and continues to test negative for substances. Mr. Lopez volunteered for residential treatment, and made it through three months in locked-down conditions at Center Point during the COVID-19 pandemic, an extremely stressful time. Also importantly, he held himself accountable for his addiction to his family. Previously, Mr. Lopez's addiction to heroin was a secret and source of shame that he had not fully confronted and his family did not fully understand. Since his release, his sister and mother (who signed his bond) have helped

---

[3] Phil Matier, "Drug-dealing arrests soar S.F. Chronicle in the Tenderloin, with no end in sight," S.F. Chronicle, June 14, 2020, *available at* https://www.sfchronicle.com/bayarea/philmatier/article/Drug-dealing-arrests-soar-in-the-Tenderloin-with-15337099.php (October 20, 2020).

[4] Heather Knight, "Two deaths a day: S.F. drug overdoses fueled by fentanyl are spiking, figures show," S.F. Chronicle, October 10, 2020, *available at* https://www.sfchronicle.com/bayarea/heatherknight/article/Two-deaths-a-day-S-F-drug-overdoses-fueled-by-15635199.php (October 20, 2020).

DEFENDANT'S SENTENCING MEMO
*LOPEZ*, CR 20–0067 VC

him overcome his addiction.  Since leaving Center Point, Mr. Lopez is no longer living off and on the street—he is happily at home with his mother and extended family.  Now, he is enrolled in classes and looking for work, while also participating in outpatient counseling.  A custodial sentence would disrupt these important, life-altering developments for Mr. Lopez.  These are all important considerations for the Court to take into account at sentencing.  18 U.S.C. § 3553(a)(2)(D).

*Third*, as noted, Mr. Lopez has already served approximately three and a half months at Santa Rita between the time of his arrest and his release from federal custody in March 2020.  That is the longest sentence he has ever served in his life, and it is more than sufficient punishment and deterrence here.  Mr. Lopez's service of over three months in local custody is also arguably disparate with respect to other defendants out of the Tenderloin who received time served sentences of a few months— ████████████████████████████████████████████████████████████████████  ████████████████████████████████████████ The Court should consider this disparity when considering whether to sentence Mr. Lopez to probation.  *Cf.* 18 U.S.C. § 3553(a)(6).

In sum, Mr. Lopez agrees with Probation's recommendation and therefore asks, for all the reasons set forth above, that he be sentenced to three years of probation.

## V. CONCLUSION

For all of the foregoing reasons, Mr. Lopez respectfully requests that the Court sentence him to three years of probation.

Dated:  October 20, 2020

Respectfully submitted,

STEVEN G. KALAR
Federal Public Defender
Northern District of California

/S
DAVID W. RIZK
Assistant Federal Public Defender